STARCHER, Appellant, v. THOMPSON, Respondent.

(152 N. W. 99.)

(File No. 3628.  Opinion filed April 12, 1915.)

1.  **Agency—Agency of Child—Sale of Motor-cycle—Father's Liability.**

A son, not employed in, or connected with his father's mercantile business, cannot bind his father by purchasing from a third part a motor-cycle shipped to the father but not delivered at his place of business, and ordered on the father's stationery surreptitiously taken by the son from his father's store without his knowledge, the latter having no knowledge of the transaction of purchase, or of the delivery of the motor-cycle.

2.  **Agency—Agency of Child—Ratification by Father—Evidence.**

Where plaintiff sold a motor-cycle to defendant's son without the father's knowledge, it having been ordered by the son, under plaintiff's instructions, on stationery surreptitiously taken by the son from his father's store, and the father thereafter informed plaintiff that the son ought to pay for the cycle and that defendant did not want plaintiff to lose anything, and would talk with the son, that he knew it was not right for the son to do as he did, **held**, there was no promise by the defendant to pay, or any ratification of the son's unauthorized order.

Appeal from Gregory County Court.  Hon. CHARLES A. DAVIS, Judge.

Action by Edwin M. Starcher against T. J. Thompson, to recover for value of a motor-cycle alleged to have been sold by plaintiff to defendant.  From a judgment for defendant, and from an order denying a new trial, plaintiff appeals.  Affirmed.

*Edwin M. Starcher*, for Appellant.

*W. J. Hooper*, for Respondent.

(2) Under point two of the opinion, Appellant cited: Landon v. Proctor, 39 Vt. 78; Mechem on Agency, Sec. 83, 84; Thurber v. Anderson, 88 Ill. 167.

SMITH, J.  Appeal from a judgment entered on a directed verdict.  The complaint alleges that Charles A. Thompson was the son and authorized agent of the defendant, T. J. Thompson, who was conducting a hardware business at Fairfax; that the son in October, 1910, requested the plaintiff to order in the name of T. J. Thompson, his father, two motorcycles, one for plaintiff and one for the son, and requested plaintiff to advance the price therefor, which plaintiff did; that two motorcycles were

shipped to T. J. Thompson, one of which was received by plaintiff, and the other by the son; that T. J. Thompson expressly agreed to pay plaintiff for the motorcycle received by the son. The answer is a general denial.

At the trial plaintiff called the son, Charles, as a witness, who testified, in substance, that his father was in the hardware business at Fairfax; that in October, 1910, the plaintiff asked the witness to find out what he could get a couple of motorcycles for, and said, "You want one, too, don't you?" to which the witness assented; that witness got a list of secondhand machines, and the plaintiff got some too, and they looked them over; that the witness had letters, written by the American Motorcycle Company to his father, giving agent's prices, which were in reply to letters written by the witness at plaintiff's suggestion; that the witness slipped into the store after night, and got stationery on which to write the letters; that the witness followed plaintiff's instructions; that the motorcycles were not ordered by the witness' father; that when the machines came the witness got a drayman to haul them to Doane's lumber yard; that this was done pursuant to the plaintiff's instructions; that the drayman who hauled them was not his father's drayman; that neither of the motorcycles ever went to the father's place of business; that one of the machines might have been brought to the store a year or so afterwards; that they did not get the machines from his father's warehouse, but that they were placed in Johnson's garage; that the witness sold his motorcycle some time later; did not give the money to his father, but kept it himself; that the witness was not working in his father's store, and did not transact any business for his father during 1910. Mr. Edens, the station agent, plaintiff's witness, testified that he had a conversation with T. J. Thompson relative to the motorcycles; that Mr. Thompson asked the witness whom the motorcycles were shipped to, who got them, and who paid for them, and said that, if there were any charges, he would not pay a cent of it. The witness told him the charges were paid by Mr. Starcher, the plaintiff.

The defendant, T. J. Thompson, called as a witness by plaintiff, testified that he was the father of Charles A. Thompson; that he was engaged in the hardware and furniture business at Fairfax; that he had a conversation with Mr. Starcher about a

year after the motorcycles were shipped about the pay for the one his son got; that he remembered saying to him:

"If he [Charles] owes you for that motorcycle, he ought to pay for it. Did say that he would have a talk with Charles, but did not say you would never lose anything."

Plaintiff, sworn as a witness in his own behalf, was asked to state the conversation had with Charles A. Thompson, relative to obtaining two motorcycles. Upon objection, the question was excluded. Plaintiff then offered to prove by the witness that Charles A. Thompson came to plaintiff's office and brought with him stationery and envelopes from his father's store, and, at the request of Charles A. Thompson, the two of them ordered the motorcycles in question. The witness then testified that he reecived one of the motorcycles; that he had a conversation with T. J. Thompson, in which he said to him:

"Mr. Thompson, I ordered, as you know, two American motorcycles on October 1, 1910, about a year ago, in your name, and they were shipped to you. You have had that motorcycle in your store and used it. You knew it when it was shipped there. You never have said one word about paying for it, and I have never said one word to you. I wont to be fair about this thing, and I don't want to lose my money. Charley Thompson came over and ordered that machine on a letter head of yours and one of your envelopes, and you knew about it, too. I don't want anything more than is right. I think you ought to pay me for it. I don't think you are doing the right thing by your boy to encourage him in any such rascality.' Mr. Thompson never said a word until I got through. 'Well,' he says, 'I know it isn't right, and I don't want you to lose anything, and I will see that you do not lose anything. I will go and have a talk with Charles.' "

Plaintiff then offered to prove that the motorcycle received by Charles A. Thompson was kept in the store in October, after its purchase, and was used by Charles A. Thompson in running errands in the general business of the defendant.

No other material or competent evidence was offered or received. Plaintiff made various offers of evidence not referred to the foregoing statements, but as none of them were competent or material, they require no further consideration.

[1,2] At the close of the evidence, the trial court directed a verdict for the defendant. The machines were ordered either by plaintiff or by plaintiff and defendant's son, and were paid for by the plaintiff, without the knowledge or authority of defendant. The fact that the defendant's son received one of the machines created no liability whatever on the part of the father. The evidence conclusively shows that, at the time the machines were ordered, the son was not employed in the father's store, and had no connection with the business whatever. Neither does the evidence show any promise to pay by defendant, nor any ratification of the unauthorized order. Appellant in his brief suggests that the acceptance of a commission on the sale of the motorcycles by defendant would be sufficient evidence to take the case to the jury on the theory of ratification. There was no evidence whatever to show that any commission was ever collected or received by the defendant. In fact, upon the record, the inference would be that plaintiff paid only the wholesale price, and therefore received the benefit of the commission himself, if any was allowed.

No citation of authorities is necessary, as the principles of law involved are elementary.

Judgement and order of the trial court are affirmed.